## FIRST NATIONAL BANK OF HUNTSVILLE, TENNESSEE, v. L. G. ASHLEY, et al.

Eastern Section.  February 23, 1929.

Petition for Certiorari denied by Supreme Court, July 19, 1929.

Chas. H. Davis, of Oneida,. for appellant.·
E. G. Foster, of Huntsville, for appellee.

THOMPSON, J.  The complainant bank sued the defendants, L. G. Ashley, E. C. Coleman and A. M. Cook, to recover a balance of $200, with interest and attorney's fee, on a $400 note executed to the complainant by the defendants on April 13, 1923.  The Chancellor awarded judgment against said L. G. Ashley and E. C. Coleman, as principals, and against A. M. Cook, as surety, for the sum of $200, with interest thereon from October 13, 1923, amounting to $66, and ten per cent attorney's fee, amounting to $26.60, making a total recovery of $292.60, and the costs of the cause.

Coleman and Cook have appealed to this court and have assigned errors.

The facts are as follows:

Prior to April 13, 1923, L. G. Ashley and E. C. Coleman endorsed a $400 note which J. L. Ashley, as principal, executed to the complainant bank.  J. L. Ashley, who was a brother of L. G. Ashley, did

not pay the note, and on April 13, 1923, L. G. Ashley and E. C. Coleman, as principals, and A. M. Cook, as endorser or surety, executed to said bank the note sued upon which is as follows:

"400.00                                                    Huntsville, Tenn. 4/13/23.

"Six months after date we promise to pay to the order of First National Bank, Huntsville, Tennessee, Four Hundred & no/100 ..... ................................Dollars. Payable at The First National Bank, Huntsville, Tenn.

"J. L. Ashley note, secured by L. G. Ashley & E. C. Coleman.

"Value received, with interest after maturity until paid. And the maker and each endorser of this note hereby waive presentment, demand for payment, protest, notice of dishonor and non-payment of this note, and it is expressly agreed by both makers and endorsers that should the holder give notice of presentment, demand for payment, protest, notice of dishonor and non-payment of same, that the giving of such notice shall in no way affect or impair the validity of the above waiver. And agree that time of payment may be extended without notice or consent and without affecting their liability, and agree if placed in the hands of an attorney, or if suit is brought thereon to pay ten per cent attorney's fees, which shall be added to and become a part of the judgment."

It will be observed that this note fell due on October 13, 1923, but it was not paid at maturity.

On November 26, 1923, L. G. Ashley drew a check on another bank for $204, payable to complainant bank, and E. C. Coleman drew a check on another bank for $200, payable to complainant bank. The total of these two checks, i. e., $404, covered the principal and interest on said $400 note. On November 28, 1923, Coleman sent these two checks to the complainant bank to take up said $400 note, and on said date said bank stamped on said note the words and figures, "paid November 28, 1923, First National Bank, Huntsville, Tennessee," and sent said note to Mr. Coleman.

The bank on which Coleman had drawn his $200 check, honored it and paid said $200 to complainant bank, but the bank on which L. G. Ashley had drawn his $204 check returned it to the complainant bank marked "Ins. funds," meaning, of course, that L. G. Ashley did not have sufficient funds in the bank upon which he had drawn the check to enable said bank to honor said check. It appears from the evidence that L. G. Ashley had some money in said bank but not as much as $204.

Complainant bank did not notify either Coleman or Cook that L. G. Ashley's check had not been honored, and they both thought that said check had been honored and paid by the said bank upon which it had been drawn, and that the transaction had been completed.

Complainant bank was never able to get the money on said $204 check, or from L. G. Ashley. On January 1, 1924, complainant bank wrote L. G. Ashley a letter requesting that he send to it a series of post dated checks in whatever amounts he could pay from time to time and thus take up said $204 check. Very shortly thereafter and in response to said request Ashley sent to complainant bank a series of eight post dated checks, each in the sum of $28.50. But complainant bank was never able to get the money on these checks.

In December, 1924, complainant bank wrote letters to both Coleman and Cook, telling them that it had never been able to get the money on said $204 Ashley check and that it was expecting to hold them liable in the event said money was not paid, etc. This was the first notice or knowledge that either Coleman or Cook had that said $204 check had not been honored and paid at the time it was drawn. And, of course, neither of them had had any notice or knowledge of the fact that Ashley had given said series of eight post dated $28.50 checks.

At the time the note was taken up by the two checks (November 28, 1923) and until some time in May, 1924, L. G. Ashley was living at Oneida, Tennessee, and was in the employ of the Tennessee Central Railroad Company as an auditor and was drawing a salary of $150 per month. After leaving the employ of said company in May, 1924, L. G. Ashley got a position with two other companies at a salary of $125 per month, but it seems that he did not hold this position very long, and for a considerable period of time he was unable to make or earn any substantial salary. Then he moved to Chattanooga, Tennessee. It appears that until Ashley left the employ of the Tennessee Central Railroad Company in May, 1924, a judgment for $204, and costs, could have been made out of him, but that thereafter such a judgment could not have been collected, etc.

Coleman and Cook insist that under all of the foregoing facts and circumstances the Chancellor should not have rendered judgment against them.

Insofar as Coleman was concerned, we do not think the decree of the Chancellor was erroneous. Coleman testified himself that he was a principal on the note, and that he sent the two checks (one of which was bad) to the complainant bank and thereby procured the surrender of the note. He may or may not have had some enforceable agreement with L. G. Ashley that each would pay one-half of the note, but the record does not so show.

But although Cook signed as a principal, it is undisputed that he was only an endorser or surety and that the bank so understood. Had he been notified that Ashley's check had not been honored, etc., he could have paid the note and until May, 1924, he could have protected himself by collecting from Ashley. But after May, 1924, it is to say the least very doubtful whether he could have protected himself by collecting from Ashley.

It is true the note stipulated that both makers and endorser waived presentment, demand for payment, protest and notice of dishonor and non-payment of the note. But this provision of the note was not applicable to Cook after the note had been marked paid and surrendered to the principal, Coleman. It seems to us that after said note had been marked paid and had been surrendered to Coleman, the bank at least owed Cook, if it expected to hold him liable as endorser or surety, the duty of notifying him that Ashley's check had been dishonored, and should thereby have given him an opportunity of protecting himself.

It results that in our opinion there was no error in the decree against Coleman, and the same will be affirmed. But the judgment or degree against Cook will be reversed and set aside, and the complainant's suit as against Cook will be dismissed.

The costs of the court below will be adjudged against Coleman and L. G. Ashley. The costs of the appeal will be adjudged against Coleman.

All concur.